UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

LANDON B.,                                                        :
through his parents John and Christine B.,         :
                                                                         :
                Plaintiff,                          :
                                                                         :
                v.                                  :     No. 5:15-cv-02959
                                                                         :
HAMBURG AREA SCHOOL DISTRICT,            :
                                                                         :
                Defendant.                       :
_____

**MEMORANDUM OPINION**

**Defendant's Motion for Judgment on the Administrative Record, ECF No. 10 – Granted**
**Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 11 – Denied**

**Joseph F. Leeson, Jr.**                                                                                           **May 2, 2016**
**United States District Judge**

       This action is brought by Plaintiff Landon B., through his parents John and Christine B., against Defendant Hamburg Area School District ("the District") under the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1400 et seq.,[1] and other related state and federal statutes and regulations. Plaintiff requests that the Court reverse a decision by Hearing Officer Dr. Linda Valentini denying tuition reimbursement to Landon's parents for his senior year of high school at the Janus School in 2014-2015. The parties have filed cross-motions for Judgment on the Administrative Record. ECF Nos. 10, 11. For the reasons set forth below, Plaintiff's Motion is denied and Defendant's Motion is granted.

---

[1]    Congress amended the IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. L. No. 108–446, 118 Stat. 2647, which took effect on July 1, 2005. Courts, however, continue to refer to the amended act as the IDEA. Except where noted, the statutory citations in this Opinion are to the IDEA as amended by the IDEIA.

I.  **Background**

    A.  **Legal Framework: The Individuals with Disabilities Education Act ("IDEA")**

This case arises under the IDEA, a federal statute requiring states that receive federal education funding to ensure that disabled children receive a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1). The statute "protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." D.K. v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012) (quoting P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 735 (3d Cir. 2009)). "Although a state is not required to supply an education to a handicapped child that maximizes the child's potential, it must confer an education providing 'significant learning' and 'meaningful benefit' to the child." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). "In addition to establishing educational standards, the IDEA includes a 'mainstreaming' component requiring the placement of a student with disabilities in the least restrictive environment that will provide the child with a meaningful educational benefit." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 556-57 (3d Cir. 2010). There is "a presumption in favor of placing the child, if possible, in the neighborhood school, and if that is not feasible, as close to home as possible." Oberti by Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1224 n.31 (3d Cir. 1993).

"The core of the IDEA is the collaborative process that it establishes between parents and schools." Ridley Sch. Dist. v. M.R., 680 F.3d 260, 269 (3d Cir. 2012). The "central vehicle" for this collaboration and the "primary mechanism" for delivering a FAPE is the Individualized Education Plan ("IEP"), which is developed based on the student's needs and areas of disability. Id. Under the IDEA, school districts must work with parents to design an IEP, which is a

program of individualized instruction for each special education student. 20 U.S.C. §§ 1412(a)(4), 1414(d). "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 589 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)). An "IEP Team" consisting of the student's parents and teachers, a curriculum specialist from the local school district, and, if requested, a person with special knowledge or expertise regarding the student must develop an IEP. 20 U.S.C. § 1414(d)(1)(B). The United States Court of Appeals for the Third Circuit has summarized the requirements of an IEP as follows:

> Though the IEP must provide the student with a "basic floor of opportunity," it need not necessarily provide "the optimal level of services" that parents might desire for their child. See Holmes, 205 F.3d at 590 (quoting Carlisle Area Sch. v. Scott P., 62 F.3d 520, 533–34 (3d Cir. 1995)). Nevertheless, "at a minimum, '[t]he IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" Chambers v. Philadelphia Bd. of Educ., 587 F.3d 176, 182 (3d Cir. 2009) (quoting Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004)).

D.S., 602 F.3d at 557; see also Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 240 (3d Cir. 2009) (explaining that once the school district has designed and administered an IEP that is reasonably calculated to enable the receipt of meaningful educational benefits, it has satisfied its obligation to provide the child with a FAPE).

"When a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: It requires that a State provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child.'" Winkelman ex rel Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). In practice, this takes the form of an administrative

proceeding centered around an "impartial due process" hearing, 20 U.S.C. § 1415(f)(1), after which "the IDEA permits an aggrieved party to bring a civil action in any court," S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir. 2013) (citing 20 U.S.C. § 1415(i)(2)(A)).

"Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate placement." Mary T., 575 F.3d at 242. "A court may grant tuition reimbursement if the School District failed to provide the required FAPE and the parents sought an appropriate private placement." Id.

### B.     Factual Background

Plaintiff Landon B. is a former District student with a history of reading and math disabilities and speech and language impairments who was eligible for services pursuant to IDEA. Pl.'s Statement Undisputed Facts ¶¶ 1-2, ECF No. 11-1 (hereinafter "Pl.'s Statement"). Landon attended school in the District from kindergarten through February of his tenth-grade school year. Id. ¶ 3. With respect to his experience at Hamburg Area High School, which enrolls students in ninth through twelfth grade, Landon testified that he "was bullied from [when] I was in tenth grade. I wasn't learning good enough, because I felt like I was failing all my grades. . . . I always felt scared every day I come in, because I was thinking that the kids would bully me all the time during the day." Administrative Record ("A.R."), N.T. 28.[2] Landon's mother testified that other students at the high school "were calling him retarded," that Landon would go to

---

[2]     Citations to "N.T." refer to the notes of testimony at the administrative hearing in this matter. Citations to "P" refer to the exhibits submitted by Landon's parents at the hearing, and citations to "S" refer to exhibits submitted by the School District at the hearing. Citations to "H.O.D." refer to the Hearing Officer's written Decision. All of these documents are included in the Administrative Record filed with the Court. See ECF No. 9.

school with his "head hung down" and was "always depressed," and that he did not want to go to school. A.R., N.T. 63.

On February 26, 2012, during Landon's tenth-grade year at the high school, Landon was lured to a basketball court located off school property by four students, one of whom struck Landon in the back of the head with a blunt instrument. Pl.'s Statement ¶ 7. Landon was transported by ambulance to the hospital where he was treated for a concussion, cuts, and contusions. Id. ¶ 8. After a period of recovery, Landon returned to the high school for two days, during which he heard rumors that another student present at the scene of the attack had made a video of the incident and was sharing it with other students. Id. ¶ 10. Landon's parents removed him from the high school for the remainder of the spring 2012 semester. Id. ¶ 13. Landon's mother requested homebound services for Landon for the remainder of the 2012 semester, but the District denied the request and Landon did not complete his tenth-grade year. Id. The student who struck Landon was placed in a juvenile facility and, at the time of the administrative hearing, was no longer attending Hamburg Area High School. Def.'s Statement Undisputed Material Facts ¶ 5, ECF No. 10-1 (hereinafter "Def.'s Statement").

Following the 2011-2012 school year, Landon's parents reached a resolution with the District that permitted a compensatory education fund to be used toward tuition for private school for two years. Pl.'s Statement ¶ 14. Landon thereafter attended the Janus School ("Janus"), a private school for students with disabilities, where he repeated tenth grade during the 2012-2013 school year and completed eleventh grade during the 2013-2014 school year. Id. ¶¶ 14-15. At the time of the administrative hearing, Landon was attending Janus for his senior year. Id. ¶ 15.

In spring 2014, prior to Landon's senior year, the District initiated a re-evaluation process pursuant to the terms of the 2012 resolution. Id. ¶ 24. Landon underwent testing at Hamburg Area High School as part of the re-evaluation process. Id. ¶ 25. At the administrative hearing, Landon testified that he felt "scared" and "nervous" about being back at the high school and felt that "some of the students might bully me again when I was coming to visit for the testing." Id. However, Landon also testified that despite his nervousness, he was able to calm himself down and concentrate on his testing, and that he ate lunch with his four or five friends at the high school that day. A.R., N.T. 47-48.

Following Landon's testing, in March 2014 the District prepared a Re-evaluation Report ("RR"). Pl.'s Statement ¶ 26. The RR determined that Landon had a specific learning disability in reading and math, as well as a speech and language impairment, and it recommended specially designed instruction and therapy in these areas. Def.'s Statement ¶¶ 12-13. With respect to Landon's performance on aptitude and achievement tests, the RR stated that "[c]omparing data from 2010 to 2014, Landon has made adequate gains in all areas except pseudoword decoding and math problem solving. Most remarked were Landon's gains in sentence composition and listening comprehension." A.R., S-6 at 4. With respect to Landon's behavioral and emotional development, the RR stated that "Landon has made significant improvement in all areas that were elevated in 2012 compared to 2014." Id. at 17. Landon and his mother indicated their agreement with the contents of the RR. Id. at 21.

On April 4, 2014, the District convened an IEP Team meeting at which the District presented a draft IEP for Landon's senior year. Pl.'s Statement ¶¶ 41-42. The draft IEP proposed that Landon's placement for his senior year would be at Hamburg Area High School. Id. In

6

response, Landon's mother stated that she was concerned about Landon being bullied at the school and that she would not consider returning Landon to the school. Id. ¶¶ 43-44.

On June 2, 2014, the District convened a second IEP Team meeting at which the District provided a second draft of the IEP and proposed an option for Landon to attend half the school day at a local vocational technology school and the other half of the day at Hamburg Area High School. Id. ¶¶ 46-47. Landon's mother again expressed her disagreement with any placement at Hamburg Area High School. Id. ¶ 46. Following the meeting, Landon's mother received by mail the District's Notice of Recommended Education Placement ("NOREP"), which recommended Landon's placement at Hamburg Area High School. Id. ¶¶ 57-58; A.R., S-9.

On August 8, 2014, Landon's parents sent a letter to the District stating that the proposed IEP "fails to meet [Landon's] academic, social, emotional, and behavioral needs," that "Landon's return to the District would be detrimental to his social-emotional health," and providing notice of Landon's placement at Janus for his senior year. Def.'s Statement ¶ 22; A.R., S-12. The District convened a final meeting on August 21, 2014, which Landon's mother attended. Pl.'s Statement ¶ 59. Again, the parties were unable to reach an agreement regarding Landon's placement for the upcoming school year. Id. Landon's parents accepted an award of partial financial aid from Janus, and Landon returned to Janus for his senior year. Id. ¶ 60.

      **B.**     **Procedural History**

By letter dated September 23, 2014, Plaintiff filed a request for a due process hearing with the Pennsylvania Office for Dispute Resolution, alleging that Landon had been denied a FAPE under the IDEA, Section 504 of the Rehabilitation Act, and Pennsylvania law, and seeking tuition reimbursement for Landon's senior year at Janus. See A.R., Pl.'s Letter (September 23, 2014). Hearings were held before Hearing Officer Linda M. Valentini on November 24, 2014,

and January 16, 2015. On February 26, 2015, the Hearing Officer issued a written Decision in which she determined that the final IEP the District offered to Landon for the 2014-2015 school year was appropriate and that the District was under no obligation to reimburse the parents for Landon's placement at Janus for the 2014-2015 school year. A.R., H.O.D. 16.

In her Decision, the Hearing Officer found credible the testimony of Landon and his mother concerning the bullying Landon experienced when he was a student at Hamburg Area High School prior to the attack. Id. at 3. The Hearing Officer also observed that Landon testified that he felt anxiety and fear when he returned to the school for testing in spring 2014 and that, at the time of the hearing, Landon testified that he was presently scared about the prospect of returning to the school. Id. at 10. However, the Hearing Officer also found that Landon continued to have friends at the high school and that when he visited the school in spring 2014 he interacted positively with the special education teacher and other students in the special education classroom. Id. at 10. Further, the Hearing Officer found that Landon had never been diagnosed with post-traumatic stress disorder and had never required the services of a mental health professional, that he exhibits no signs of clinical anxiety, and that he is able to "successfully employ emotional regulation." Id. at 11. The Hearing Officer also observed that Landon "testified confidently and competently" and "carried himself well" at the due process hearing and that "[b]y all accounts [Landon] has matured and blossomed academically and socially." Id. at 15. Ultimately, the Hearing Officer concluded that Landon's parents had "adduced no proof" that returning to the high school would cause Landon undue stress and trauma that would impede his learning, and that the parents had provided "not a trace of evidence" that the high school environment is hostile and triggers post-traumatic stress symptoms in Landon. Id.

8

With respect to the IEP, the Hearing Officer found that the IEP was "clearly appropriate under the standards set forth in the IDEA," and that Landon's parents had not provided "any evidence to support their allegations that the IEP is inappropriate." Id. at 13. Specifically, the Officer found that the IEP was "based upon a thorough reevaluation," that it "presented measurable goals to address each of [Landon's] educational needs," and that it "provided for specially designed instruction to assist [Landon] to access the curriculum." Id. The Hearing Officer found that various objections to the IEP raised by Landon's parents at the hearing were "stretches and red herrings" and that Landon's parents would have rejected any IEP the District offered that did not keep Landon at Janus. Id. The Officer also found that during the District's three IEP meetings, Landon's parents "offered absolutely no input regarding changes they would like to see in the IE," and that Landon's mother had "sabotaged" the meetings by "refusing to participate in the planning process beyond asking to what extent the District would fund Student's last year in Private School." Id. The Hearing Officer also determined that "[i]nsofar as the Parents may allege that the District did not offer a plan for [Landon's] gradual transition back to the high school, their refusal to engage in the IEP planning process when the transition could have been set forth nullifies this concern." Id.

In sum, the Hearing Officer found that Landon's parents had "not met their burden of proving their allegations that the District offered an inappropriate IEP or that returning to the District would have been harmful" to Landon. Id. at 15. Although the Hearing Officer acknowledged that Landon had done "very well" at Janus and that "[i]t is not difficult to empathize" with his parents' desire that he remain at the school, the Officer found that "the District was under no obligation to continue the Parents' chosen placement once the funds [from the prior settlement] were exhausted and an appropriate IEP was on the table." Id.

9

**II. Legal Standards: Judicial Review of Decision-Making by a State Educational Agency under IDEA**

A district court has jurisdiction to review the decision of the state educational agency under 20 U.S.C. § 1415(i)(2). "When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review." D.S., 602 F.3d at 564. (citing P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009)). Under this standard, "[a]lthough the District Court must make its own findings by a preponderance of the evidence, it is also required to afford due weight to the factual findings of the hearing officer." Munir v. Pottsville Area Sch. Dist., 723 F.3d 423, 430 (3d Cir. 2013). "The 'due weight' standard requires the court to consider the factual findings from the administrative proceedings prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them." Id. (quoting Mary T., 575 F.3d at 241).

"[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." Ridley Sch. Dist., 680 F.3d at 270.

**III. Analysis**

Plaintiff contends that "the Hearing Officer found that the District's proposed June 4, 2014 IEP was appropriate based largely not on the content of the IEP – including that it was to be implemented in a setting where Landon had previously suffered from academic, social, and behavioral failure, and of which he was fearful – but on the actions of Landon's Parents during the IEP process." Pl.'s Mem. Supp. 22, ECF No. 11. In this way, Plaintiff contends, the Hearing Officer "improperly conflated her analysis whether the offered IEP was appropriate with her views regarding whether the Parents properly articulated the deficiencies with the IEP during the period when the IEP team met." Id. at 23. Further, Plaintiff contends that the Hearing Officer's

Decision fails to address numerous deficiencies in the IEP and, "[e]ven more fundamentally . . . does not address how the District's IEP could conceivably be appropriate where it offered largely the same program, in the same setting, in which Landon had experienced profound social, emotional, and academic failures for a period of years, prior to entering Janus, and to which he feared returning." Id. at 23-24.

The District contends that "the record fully supports the Hearing Officer's conclusion that the IEP is reasonably calculated to yield meaningful educational benefit." Def.'s Br. Supp. 11, ECF No. 10-2. In response to Plaintiff's contention that the Hearing Officer's review of the IEP was improper, the District responds that the Hearing Officer conducted an "appropriately detailed and thorough" review of the IEP, "examin[ing] all of the essential elements of an IEP including a thorough reevaluation, accurately identifying needs, specially designed instruction to allow access to the curriculum, related services, a transition plan for post-secondary life, behavior, and assistive technology." Def.'s Resp. Br. 3, ECF No. 14.

"The issue of whether an IEP is appropriate is a question of fact." D.S., 602 F.3d at 564 (quoting S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 271 (3d Cir. 2003)). "When parents challenge [the adequacy of] a school's provision of a [free and appropriate public education] to a child, a reviewing court must (1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'" Id. (quoting Mary T., 575 F.3d at 249).

Here, the Hearing Officer properly assessed the IEP in light of Landon's needs and abilities, and there is no indication that the Officer conflated her analysis of the appropriateness of the IEP with her assessment of the conduct of Landon's parents at the IEP meetings. See A.R.,

H.O.D. 7-9, 13. The two discussions are found in separate paragraphs, and it is clear from the context of the Officer's findings concerning the conduct of Landon's parents that these findings are made in support of the Officer's conclusion that Landon's parents "would have rejected any IEP the District offered that did not keep [Landon] at [Janus]," a conclusion that is independent from the Officer's conclusions concerning the appropriateness of the IEP. See id. at 13.

With respect to the Hearing Officer's specific findings regarding the content of the IEP, as set forth above, the Hearing Officer found that the IEP appropriately "presented measurable goals to address each of [Landon's] needs," that it "provided for specially designed instruction to assist [Landon] to access the curriculum," and that it "provided related services," including assistive technology. Id. at 13. The Court agrees with these findings and agrees with the Hearing Officer's determination that the IEP "more than satisfied the requirements for an appropriate IEP." See id. at 14.

Although Plaintiff contends that the IEP contained various deficiencies, the focus of Plaintiff's claims is not the particular details of the IEP but rather the contention that any IEP that included placement at Hamburg Area High School would have been inappropriate in light of Landon's past experience at the school and his fears about returning there. As set forth above, the Hearing Officer's Decision acknowledged that Landon had been bullied in tenth grade and had expressed fears about returning to the school. Nevertheless, the Hearing Officer concluded that Landon would be able to overcome these obstacles and receive an appropriate education at the high school. In reaching this conclusion, the Hearing Officer considered a variety of factors, including the absence of evidence that Landon had suffered any lasting emotional damage from the 2012 attack, his ability to interact positively with teachers and peers during his visit to the school in spring 2014, and his demeanor and presentation at the hearing. Plaintiff contends that

the composure and maturity Landon had achieved at the time of the hearing were due in large part to his positive experience at Janus, and that a return to Hamburg Area High School would have put in jeopardy the gains that Landon realized at Janus. This concern is understandable. On balance, however, and particularly in view of Landon's demonstrated emotional maturity and social skills, the Court agrees with the Hearing Officer that Landon would have been able to receive an appropriate education at Hamburg Area High School for his senior year pursuant to the IEP prepared by the District.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for judgment on the administrative record is denied and Defendant's cross-motion for judgment on the administrative record is granted as to all counts.[3] The decision of Hearing Officer Valentini is affirmed. An appropriate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[3] Because Plaintiff's claim of discrimination under section 504 of the Rehabilitation Act is based on the same underlying allegations in Plaintiff's IDEA claim, it is dismissed because Plaintiff has failed to establish his IDEA claim. See H.D. ex rel. A.S. v. Cent. Bucks Sch. Dist., 902 F. Supp. 2d 614, 628 (E.D. Pa. 2012).